UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-82054-CIV-MARRA

JEFFREY B. SCOTT,

Plaintiff,

vs.

CERTAIN UNDERWRITERS AT LLOYD'S
LONDON SUBSCRIBING TO POLICY NO.
B0901LI1837279 AND RLI INSURANCE
COMPANY,

Defendants.
_____/

**ORDER**

This cause is before the Court upon Defendant Certain Underwriters at Lloyd's, London's Motion to Dismiss (DE 21). The Motion is fully briefed and ripe for review.

I. Background

Plaintiff Jeffrey B. Scott ("Plaintiff" "Scott") filed a two-count Complaint (DE 1-2) for breach of contract against Defendant Certain Underwriters at Lloyd's, London's ("Underwriters") and RLI Insurance Company ("RLI") (collectively, "Defendants") in the Circuit Court of the 15th Judicial Circuit in and for Palm Beach County, Florida. Defendant RLI Insurance Company ("RLI") subsequently removed to this Court on November 10, 2021. (DE 1.)

According to the allegations of the Complaint, Underwriters issued a Professional Liability, Directors & Officer's Liability and Fiduciary Liability Insurance policy ("the Policy") number B0901LI1837279 to Gemini Financial Holdings, LLC ("Gemini"). (Compl. ¶ 7.) The Underwriters Policy is a claims-made and reported policy that provides coverage for claims made against the directors, officers, and managers of Gemini during the policy period. (Compl. ¶ 8.) Underwriters

1

agreed to "pay on behalf of the Insured Persons all Loss which is not indemnified by the Insured Organization resulting from any Claim first made against the Insured Persons and reported in writing to the Underwriters during the Policy Period . . , if applicable, for a Wrongful Act." (Compl. ¶ 10.) A claim means, in relevant part, "a written demand for monetary damages, nonmonetary, or injunctive relief against any of the Insureds." (Compl. ¶ 12.)

Plaintiff was the CEO, President and Secretary of Gemini. (Compl. ¶ 27.) Gemini Financial Holding Corp. ("Gemini Corp.") is a property and casualty insurance holding company that operates exclusively in the Florida insurance marketplace. Its ownership is held by Gemini, the members of which were, at all relevant times, Plaintiff and an investment fund (the "Pegasus Fund"). The Pegasus Fund is externally managed by Pegasus Capital Advisors LLC ("Pegasus"), which is a U.S.-based private equity fund advisor. (Compl. ¶ 28.) The underlying claim arises from Pegasus' actions to harvest Gemini's assets and materially divest Plaintiff of his interests for its own financial gain. (Compl. ¶ 29.) A disagreement arose between Plaintiff and Pegasus which lead to Pegasus' attempt to terminate Plaintiff's employment as CEO, President and Secretary of Gemini Corp. and its subsidiaries on October 24, 2019. (Compl. ¶¶ 30-39.)

Gemini and Pegasus (collectively, "the Company") advised Plaintiff that they were in the process of reviewing Plaintiff's conduct to determine if the termination was with or without cause. (Compl. ¶ 40.) The letter stated that the Company was "prepared to take all necessary steps to enforce their rights and [Plaintiff's] obligations." (Compl. ¶ 42.) The following day, the Company wrote that it "will be seeking all appropriate action against [Plaintiff] to recover for the damage he has caused and continues to cause." (Compl. ¶ 44.) By letter dated November 13, 2019, the Company alleged that Plaintiff "tortiously interfere[d] with and destabilize[d] the Company," which it asserted was a "breach of [his] contractual and fiduciary obligations and clear interference with the Company's contractual relationships and prospective business advantage under Delaware law . . . causing significant damage to the Company and its shareholders." It also asserted that Plaintiff

attempted to convince Gemini Corp. employees to quit, in violation of his employment agreement, and that the Company "intend[ed] to pursue all available remedies, including seeking recovery of monetary damage suffered as a result of [Plaintifff's] misconduct" as "[Plaintiff's] misconduct caused injury and significant monetary harm to the Company that must—and will— be remedied by [Plaintiff]." (Compl. ¶ 45.)

Underwriters moves to dismiss the Complaint on the basis that no "claim," as that term is defined in the Policy has been made against Plaintiff, and therefore no coverage has been triggered under the Policy. Plaintiff responds that there has been a breach of contract because a claim was made under the Policy.

II.  Legal Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950.  When considering a motion

to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted.

III. Discussion

Under Florida law, a plaintiff asserting a breach of contract action must establish (1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach. Rollins, Inc. v. Butland, 951 So. 2d 860, 876 (Fla. Dist. Ct. App. 2006). Interpretation of an insurance policy is a matter of law for the Court to decide. Gulf Tampa Drydock Co. v. Great Atl. Ins. Co., 757 F.2d 1172, 1174 (11th Cir. 1985).

The only question before the Court is whether the Complaint alleges that a "claim," as defined under the Policy, was asserted against Plaintiff. As highlighted below, a "claim" means "a written demand for monetary damages, nonmonetary, or injunctive relief against any of the Insureds." (Compl. ¶ 12.) To answer the question of whether a claim was asserted against Plaintiff, the Court will first examine cases from within the Eleventh Circuit arising under Florida law and cited by Underwriters.

In Navigators Ins. Co. v. Florida Dep't of Fin. Servs., the court examined a letter received by the insured which gave notice of "an intention to assert claims against the former officers, directors and shareholders for wrongful acts including, but not limited to breach of duty, neglect, error, mistaken statement, misleading statement, omissions or other wrongful acts. If there is further information needed either to perfect this claim, or to comply with the notice requirement of any applicable policy, please let us know immediately." Navigators Ins. Co. v. Florida Dep't of Fin. Servs., No. 4:12CV491-RH/CAS, 2014 WL 11958628, at *3 (N.D. Fla. Jan. 9, 2014) (internal quotation marks and ellipses omitted). The court held that the letter did not make a "present demand for payment or other relief." Id. at 5. In so ruling, the court relied upon Clarendon Nat'l Ins. Co. v. Muller, 237 F. App'x. 451, 452 (11th Cir. 2007) and Florida Dep't of Fin. Servs. v. Nat'l Union

Fire Ins. Co. of Pittsburgh, Pa., No. 4:11cv242/RS-WCS, 2012 WL 760606, at *3-4 (N.D. Fla. March 7, 2012).

In Clarendon, the Eleventh Circuit examined a policy which defined a claim as "a demand received by the Insured for money or services arising out of an act or omission, including personal injury, in the rendering of or failure to render legal services." Clarendon Nat. Ins. Co. v. Muller, 237 F. App'x at 452.  The Eleventh Circuit explained the letter was not providing notice that any present demand had been made. Id.  Instead, the letter "simply informed" the insurer that, "if future events did not resolve the [insured's] concerns that [the]y would suffer damages as a result of [ ] malpractice, [they] may make a demand for money or services, in the form of a lawsuit."  Id.

> In Florida Dep't of Fin. Servs, the court considered the following letter in part:
>
> This letter gives notice to your company pursuant to Paragraph 7 of the National Union policy as well as pursuant to the notice provisions of any other potentially applicable policy issued by National Union. It is [the insured's] intention to assert claims against the former officers, directors and shareholders of American Superior for wrongful acts including, but not limited to breach of duty, neglect, error, mistaken statement, misleading statement, omission or other wrongful acts by each of these directors and/or officers resulting in injury in excess of $5 million.
>
> This letter shall also serve as a notice of circumstances which may reasonably be expected to give rise to a claim being made against any and all persons or entities insured under the above captioned policy in connection with wrongful acts committed by the former officers, directors and shareholders of American Superior.
>
> To Date, [the insured's] investigation has revealed that the directors and/or officers may have breached duties of a fiduciary nature, causing American Superior to be placed in rehabilitation. [The insured's] investigation continues and [the insured] may ultimately assert further or different claims, although all arising out of the same circumstances described above.

Florida Dep't of Fin. Servs., 2012 WL 760606, at *3-4. (internal quotation marks and ellipses omitted).

The court held that the letter was not a claim as defined by the policy but instead "announce[d] an intention to assert claims." Id. at * 4.  Moreover, the court explained that "[t]his is a future action, not one that has or is currently occurring. Further, the letter is not a written demand for relief.  It makes no present demand for any action from Defendant, such as tendering the policy limit." Id. (internal quotation marks and ellipses omitted.)

In National Fire Ins. v. Bartolazo, a medical malpractice insurer brought a declaratory action that a doctor's claim was not timely.  National Fire Ins. v. Bartolazo, 27 F.3d 518 (11th Cir. 1994). The policy defined a "claim" as "the receipt by you of a demand for money or services, naming you and alleging a medical incident." Id. at 519. The letter at issue there stated:

> Our office, in association with the office of James H. Turner, represents Helen Marsico in her claim for medical malpractice and other relief against you.
>
> You are requested to furnish to us copies of all your medical records pertaining to Helen Marsico within 10 business days of the date of this letter. Authorization for the release of medical information signed by Ms. Marsico is enclosed.
>
> We will reimburse you for reasonable copy charges for copies of your records.

Id. at 519 n.1.

The court found that the letter did not constitute a claim, noting that it made no demand for money or services, nor did it allege a medical incident. Id.

Based upon these cases, Underwriters contends that the communications upon which Plaintiff relies to meet the definition of a claim do nothing more than demonstrate the possibility of a claim in the future. For example, the language communicated to Plaintiff used words such "*prepared to take*"[1]

---

[1] "prepared to take all necessary steps to enforce their rights and [Plaintiff's] obligations" (Compl. ¶ 42.)

"*will be seeking*"[2] "*intend*"[3] and "*will*."[4] (Compl. ¶ ¶ 42, 44-45.) (emphasis added).    Each of the cases highlighted above has similar language, such as "intention" and "may," and each found the letters did not indicate a present demand. Underwriters asserts that this language implies future action and not a present demand for action.

Plaintiff, however, challenges this interpretation of the letters between the parties and argues that the cases cited by Defendant are distinguishable. Plaintiff attaches the letters between the parties to its response memorandum.[5] (DE 35-1, 35-2.)  According to Plaintiff, these letters detail the Company's investigation and demand for recovery from the alleged monetary damage caused by Plaintiff.  Plaintiff also asserts that these letters demonstrate that the Company already stripped Plaintiff of his rights and withheld compensation. (DE 35 at 7.)  Therefore, Plaintiff contends that the letters in this case, as opposed to the letters in Navigators, do not provide notice of a claim, but set forth the Company's present demand and the remedies already taken by the Company.  Likewise, Plaintiff asserts these letters differ from the facts in Clarendon because the November 13 letter did not contain any uncertainty and was not sent in isolation but followed a series of letters informing Plaintiff that he was under investigation.  Plaintiff makes the same argument with respect to Bartolazo and also contends that the letters here had a different tenor than in Bartolazo.

Next, Plaintiff relies on Seneca Ins. Co. v. Kemper Ins. Co., No. 02 CIV. 10088 (PKL), 2004 WL 1145830, at *5 (S.D.N.Y. May 21, 2004) which is not controlling authority.  In Seneca, the letter

---

[2] "will be seeking all appropriate action against [Plaintiff] to recover for the damage he has caused and continues to cause" (Compl. ¶ 44.)

[3] "intend[ed] to pursue all available remedies, including seeking recovery of monetary damage suffered as a result of [Plaintiff's] misconduct" (Compl. ¶ 45.)

[4] "[Plaintiff's] misconduct caused injury and significant monetary harm to the Company that must—and will—be remedied by [Plaintiff]." (Compl. ¶ 45.)

[5] The Court may consider these letters as they are referred to in the Complaint and central to the claims. Wilchombe v. TeeVee Toons, Inc., 555 F.3d 949, 959 (11th Cir. 2009).

requested a meeting to seek a "possible resolution" and the court interpreted the entire record to mean that counsel requested the meeting to demand monetary damages. Id. at * 5. The court also relied upon another letter that attached a draft complaint to it and noted that the pleadings in Seneca referred to the letter as a claim. Id.

Plaintiff relies upon Fidelity Nat. Prop. & Cas. Co. v. Boardwalk Condo. Ass'n, Inc., for the position that a claim does not require "that a demand formally indicate that a lawsuit is contemplated or that a specific dollar amount be demanded." (DE 35 at 9.) Fidelity Nat. Prop. & Cas. Co. v. Boardwalk Condo. Ass'n, Inc., No. 3:07CV278/MCREMT, 2010 WL 1911159 (N.D. Fla. May 12, 2010). In that case, the letter at issue sought reimbursement and stated, "we must request reimbursement of the overpayment. This payment must be received in our office within 15 days from the date of this letter. If we do not receive the overpayment we will have no choice but to take further action to make this recovery." Id. at * 2. (ellipses omitted).

Plaintiff's last case for the Court to consider is Paradigm Ins. Co. v. P & C Ins. Sys., Inc., 747 So. 2d 1040 (Fla. Dist. Ct. App. 2000). There, the policy defined a claim as "a demand for money or services made by a third party, made in writing against the Insured and actually received by the Insured." Id. at 1041.

The Court disagrees with Plaintiff's interpretation that the language in the letters sent to him demonstrates a present demand sought from Plaintiff or that the Company's alleged actions taken against Plaintiff constitute a claim under the Policy. Specifically, the Court concludes that the facts in Seneca differ significantly from the facts here. In Boardwalk Condo., the letter demanded a payment within 15 days whereas in the instant case no time sensitive demand was made. And in Paradigm, unlike here, the letter made a statement of personal injury and resulting loss and requested that the letter be turned over to the insurance carrier. Thus, the Court concludes that the communications between the parties implied future action might be brought against Plaintiff, and there were no present demands.

8

Based on the facts alleged, the Court finds, as a matter of law, that no claim has been alleged. Defendant Underwriters' motion to dismiss is granted and Plaintiff is granted leave to amend the Complaint in good faith.

IV. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendant Certain Underwriters at Lloyd's, London's Motion to Dismiss (DE 21) is **GRANTED**.  Plaintiff may amend the Complaint **within 15 days of the date of entry of this Order.**

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 23rd day of February, 2022.

KENNETH A. MARRA
United States District Judge